IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARVIN R. SCHULZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-06-2063 |
| | § | |
| NATHANIEL QUARTERMAN, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER DENYING PETITIONER'S
§ 2254 APPLICATION FOR WRIT OF HABEAS CORPUS**

Pending in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254 is Respondent's Answer (Document No. 14) to Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered Respondent's Answer, in which respondent argues that none of Petitioner's claims has any merit, Petitioner's Response and Traverse (Document No. 17), the claims raised by Petitioner in his Federal Application for Writ of Habeas Corpus, the state court records, and the applicable law, the Court ORDERS,[1] for the reasons set forth below, that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED on the merits.

---

[1] On August 8, 2007, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 21.

I.  **Introduction and Procedural History**

Marvin R. Schulz ("Schulz") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of a 2003 conviction in the 232nd District Court of Harris County, Texas, Cause No. 943823, for murder. Schulz was charged by Complaint with the murder of Barbara Witte on August 25, 2002. Schulz was subsequently indicted on that offense in Cause No. 922186, but was reindicted on March 28, 2003, in Cause No. 943823. On April 14, 2003, a jury found Schulz guilty of murder, and sentenced him to fifty (50) years imprisonment.

Schulz appealed to the Texas Court of Appeals for the First Judicial District. The Court of Appeals, in an unpublished opinion entered on July 22, 2004, affirmed Schulz' conviction. *Schulz v. State*, No. 01-03-00384-CR. Thereafter, on March 3, 2005, Schulz' petition for discretionary review was refused by the Texas Court of Criminal Appeals. Schulz then filed a state application for writ of habeas corpus. On June 7, 2006, that application was denied by the Texas Court of Criminal Appeals without written order on the findings of the state trial court without a hearing. *Ex Parte Schulz*, Application No. WR064,664-01. This § 2254 proceeding, filed on or about June 13, 2006, followed.

II. **Factual Background**

The factual background, set forth by the Texas Court of Appeals in its unpublished opinion affirming Schulz' conviction, is as follows:

> In August 2002, Schulz drove the complainant, Barbara Witte, to her employment at an icehouse. Schulz remained at the bar to drink while Witte served drinks. Clifton Sellers and a man named "Purdy" were also drinking at the icehouse. Sellers and Purdy left the premises after Schulz and Purdy argued. Other icehouse patrons also left, because Schulz was "drunk and mouthing."

2

>Later that evening, Sellers and Purdy returned to the icehouse. This time, Sellers and Schulz had an argument. It ended when Schulz announced he was going home to retrieve his gun, and drove away. When Schulz returned to the icehouse parking lot, Witte looked outside the icehouse door and said, "No. Go put it up." Witte also told Sellers to leave. As Sellers walked to the door to leave, Schulz shot him, through Witte, who stood in front of Sellers. Sellers ran to a convenience store across the street and called the police.
>
>Officer B. Davis arrived in the scene and asked Sellers what happened. Sellers replied that, "Marvin shot me through his old lady." Officer Davis walked into the bar and found Schulz sitting nearby, smoking a cigarette. Officer Davis asked what happened, and Schulz replied, "I did it, sir. I shot her." Officer Davis took Schulz into custody and recovered a gun from inside Schulz's truck.

*Schulz v. State*, No. 01-03-00384-CR at 2-3.

### III. Claims

Schulz raises three claims in his § 2254 application:

1. that the trial court interfered with his defense of justification/self defense, in violation of his due process rights;

2. that the jury charge, which did not contain an instruction on self defense, was defective; and

3. that his trial counsel was ineffective.

Schulz raised claims one and two in his direct appeal. He raised all three claims in his state application for writ of habeas corpus. The state courts rejected each of the claims on the merits. *Schulz v. State*, No. 01-03-00384-CR; *Ex Parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (denial of a state application for writ of habeas corpus denotes that Texas Court of Criminal Appeals addressed and rejected the merits of an applicant's claims), *cited with approval in Jackson v. Johnson*, 150 F.3d 520, 524 (5th Cir. 1998), *cert. denied*, 526 U.S. 1041 (1999).

### III.    Standard of Review

In his Answer, Respondent argues that Schulz is not entitled to any relief on his claims under § 2254(d) because the claims were properly adjudicated on the merits by the state courts.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. But "'a federal habeas court may not issue the writ simply because that court concludes

4

in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 123 S. Ct. at 1853 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000)." *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. granted in part,* 124 S.Ct. 46 (2003).

Of utmost significance under § 2254(d) is the principle that once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have

been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted).

## IV. Discussion

### A. Interference with Justification/Self Defense

In his first claim, Schulz alleges that the trial court, through its evidentiary rulings, interfered with his right to present his defense of justification and/or self defense, and that such interference violated his right to due process. The entirety of Schulz' allegations in his § 2254 application in support of this claim are as follows:

> By overtly and obliquely limiting, circumventing, and ultimately altogether aborting defensive efforts to develop and lay a proper predicate for Petitioner's defense of justified use of deadly force in self-defense to the jury (RR.IV – 98-110), the judge abandoned a neutral role by arbitrarily arrogating [sic] the fact-finding function to herself. [As supported by trial records available to this Court]. . . . The injudicious temperament of the trial judge operated to frustrate and obstruct good faith defense efforts (RR.IV – 31-118; 122-123), to develop evidence substantiating the essential components of a viable defense, i.e., self-defense, from which jurors could ascertain the presence or absence of proof validating Petitioner's defense. [As supported by trial records available to this Court].

§ 2254 Application (Document No. 1) at 7. In his Response and Traverse to Respondent's Answer, however, Petitioner makes more specific mention of the trial court's evidentiary rulings, citing the trial court's refusal to allow the jurors "to hear Petitioner's testimony found at RR. IV – 122-123, and that of Gina Phillips, RR. IV – 111-118, nor be made aware of what is contained in Clifton Sellers' official criminal record, reflected in Defendant's Trial Exhibit Number 1." Petitioner's Response and Traverse (Document No. 17) at 7.

Habeas relief is generally not available to correct state law evidentiary errors. Relief is, however, available if the evidentiary error also violates a defendant's federal constitutional right or renders the defendant's trial fundamentally unfair. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000); *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) ("A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair.").

The Texas courts rejected Schulz' complaints about the trial court's evidentiary rulings in connection with both Schulz' direct appeal and his state application for writ of habeas corpus. That rejection is not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. With respect to Schulz' complaints about the trial court's refusal to allow him to testify about Clifton Sellers' character and reputation for violence, the trial court ruled that such character and reputation testimony was not admissible given Schulz' failure to present evidence in support of his claim of self-defense. In particular, the trial court determined that evidence about Sellers' reputation, character, and specific instances of conduct would not be allowed until some evidence was adduced in support of a self-defense theory. *See* S.F. Vol. IV at 52 (THE COURT: "So before we get into reputation, character, specific instances of conduct, I need to hear testimony that shows self-defense is being raised . . . [t]he immediate need, the duty to retreat, the use of deadly force, all of it."). Schulz' counsel attempted to adduce such evidence from Schulz, but the trial court found that Schulz' testimony did not constitute evidence of self-defense under Section 9.32 of the Texas Penal Code. In so doing, the trial court explained to Schulz' counsel:

7

> Not in the absence of some evidence. The unlawful use of deadly force or the attempted use of deadly force by the other person, I have no evidence of that. . . . [E]ven from his perspective, I have heard no evidence of any deadly force being used by Cliff Sellers or attempted to being used. If you can't establish that, then you don't have it. . . . There is no evidence of any kind of deadly attack or attempted deadly attack or attempted use of deadly force by Cliff Sellers against your client. There is no evidence in this record of that. I am obliged to sustain the state's objection. If that's all you have that he grabbed his shoulder, that's not enough. . . . Well, either your evidence raises your defense under 932 or it doesn't; and it hasn't so far; and unless you can bring me evidence of a defense under 932, I can't submit it to the jury.

S.F. Vol. IV at 69, 70, 75. Gina Phillips' proposed testimony regarding Seller's violent nature, and the exclusion of the documentary evidence of Seller's prior criminal record, were likewise based on Schulz' failure to present evidence in support of his self-defense claim.

The trial court's ruling on the admissibility of such character/reputation evidence did not violate Schulz' constitutional rights and did not render his trial fundamentally unfair. In Texas at the time of Schulz' trial, self defense to a charge of murder, set forth in Section 9.32 of the Texas Penal Code, required proof that: (1) the person would have been justified in using force against the other under Section 9.31; (2) a reasonable person in the same situation would not have retreated; and (3) the person reasonably believed that deadly force was immediately necessary to protect himself or herself against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE § 9.32 (Vernon 2003). Here, a review of Schulz' testimony reveals no evidence that Schulz' use of deadly force was in response to Seller's use or attempted use of deadly force. While Schulz argues herein, as he did in the state courts, that he believed Sellers was prepared to use, or was going to attempt to inflict serious bodily injury upon him, Schulz testified at trial that he and Sellers were in a verbal altercation – not a physical altercation, and that Sellers did nothing more than grab and squeeze his shoulder from behind. There being no evidence to support Schulz' claim of self defense under section

9.32 of the Texas Penal Code, evidence of Seller's character and reputation was not admissible under Rule 404 of the Texas Rules of Evidence. Accordingly, the trial court did not err in excluding such testimony, and the Texas appellate courts' rejection of this claim is not contrary to or an unreasonable application of clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence. No relief is available on this claim under § 2254(d).

**B.     Jury Charge**

In his second claim, Schulz maintains that the trial court erred, and violated his due process rights, when it did not include a self defense instruction in the jury charge. According to Schulz, the evidence clearly supported such an instruction.

To be entitled to federal habeas corpus relief on an improper jury instruction claim, a habeas petitioner must establish that the erroneous instruction was so prejudicial that it negatively affected the outcome of the trial. *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir.), *cert. denied*, 464 U.S. 1002 (1983). An improper jury instruction violates a defendant's constitutional rights if the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In a collateral proceeding, such as this, the question is "not merely whether 'the instruction is undesirable, erroneous, or even universally condemned,'" but "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* Given this standard, it is rare that an improper jury instruction will warrant the reversal of a

criminal conviction; it is even more rare that an improper jury instruction will warrant the reversal of a criminal conviction if an objection to the allegedly improper instruction has not been made in the trial court. *Id.* Finally, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155.

Schulz raised his jury charge claim in his direct appeal. In rejecting the claim, Texas' Court of Appeals wrote:

> Schulz contends that the trial court erred in not including an instruction on self-defense.
>
> A trial court should charge a jury on any defensive issue raised by the evidence, "regardless of its substantive character." *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). *Brown* states:
>
>> A defendant is entitled to an affirmative defensive instruction on every defense raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted,, and even if the trial court is of the opinion that the testimony is not entitled to belief. The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge.
>
> *Id.* (quoting *Williams v. State*, 630 S.W.2d 640, 643 (Tex. Crim. App. 1982)). Accordingly, the trial court should have instructed on self-defense using deadly force if the evidence shows that (1) Schulz used deadly force; (2) he reasonably believed his use of deadly force was immediately necessary to protect himself from a use of deadly force by Sellers; and (3) a reasonable person in Schulz's position would not have retreated. *See* TEX. PENAL CODE ANN. §§ 9.31, 9.32 (Vernon 2003).
>
> A person is justified in using force against another when, and to the degree, he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. *Id.* at § 9.31. A person is justified in using deadly force against another (1) if he would be justified in using force against the other under section 9.31; (2) if a reasonable person in the actor's situation would not have retreated; and (3) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* at § 9.32. A "reasonable belief" means a belief that would be held by an ordinary prudent person in the same circumstances as the actor. *Id.* at § 1.07(a)(42) (Vernon Supp. 2004).

Schulz contends that he raised evidence entitling him to a self-defense instruction. We disagree. The record reflects that Sellers became belligerent when Schulz stopped playing pool. Sellers told Schulz that, "I'm going to kick your ass." After this threat, Schulz left the bar and returned home. Because he had to drive Witte home, he returned to the icehouse, but with a pistol in his truck. Schulz sat down at the bar and continued to drink. Sellers continued making threats. Schulz testified that he stated, "If you don't leave me alone, I am going to shoot you" or "I am going to get my pistol or something to that effect." Because Sellers continued bullying him, Schulz walked out of the icehouse, retrieved his pistol from his truck, and returned to his seat at the bar.

Schulz testified that later in the evening, Sellers grabbed his shoulder from behind him. Schulz stood up from his bar stool, took out his pistol from his back pocket, and fired two shots. Schulz testified that when Sellers grabbed his shoulder from behind, he was afraid for his life, and believed that Sellers could inflict serious bodily injury. He could not see whether Sellers had anything in his in his hands, so that he had no idea if Sellers carried a beer bottle. Schulz admitted that when he went to retrieve his pistol from the truck, he had the opportunity to leave.

Schulz offered no testimony or evidence that Sellers used or attempted to use deadly force against him at he time he shot Sellers and Witte. Schulz did not see anything in Sellers['] hands, and Sellers did not use or attempt to use deadly force. Schulz's speculation that because he did not know whether Sellers carried a beer bottle in his hand, and thus he might have had one, is not evidence of an attempt or use of deadly force. *See Starks v. State*, 127 S.W.3d 127, 132-33 (Tex. App.–Houston [1st Dist.] 2003, no pet.). Moreover, Schulz did not present evidence to show that a reasonable person could not have retreated when Sellers allegedly grabbed his shoulder. *See* TEX. PENAL CODE ANN. § 9.32(a)(2). The trial court thus properly denied the request for a self-defense instruction.

Schulz further contends that the trial court erred in not allowing him to present evidence regarding Sellers's violent history.

Generally, a defendant in a murder prosecution who raises the defense of self-defense may introduce evidence of the victim's violent character. TEX. R. EVID. 404(a)(1); *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). The defendant may offer opinion or reputation testimony to prove the victim acted in conformity with his violent nature. TEX. R. EVID. 404(a)(2); *Torres*, 71 S.W.3d at 760. Specific, violent acts of misconduct may be admitted to show the reasonableness of the defendant's fear of danger or to show that the victim was the first aggressor. *Torres*, 71 S.W.3d at 760; *Mozon v. State*, 991 S.W.2d 841, 845-46 (Tex. Crim. App. 1999). Because we have held that the trial court properly denied Schulz's request for an instruction on self-defense, evidence of Seller's violent past is not relevant. *Torres*,

11

71 S.W.3d at 760-61; *Hernandez v. State*, 969 S.W.2d 440, 445 (Tex. App.– San Antonio 1998, pet. ref'd). We hold that the trial court did not abuse its discretion in refusing to admit the evidence.

*Schulz*, No. 01-03-00384-CR at 3-6.[2]

The Texas Court of Appeals' rejection of Schulz' jury charge claim is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence. In federal habeas proceedings, federal courts are not to review a state's interpretation of its own law. This includes a state's interpretation of its law(s) governing defenses to criminal charges and the applicable jury instructions relative thereto. *Valles v. Lynaugh*, 835 F.2d 126, 127-28 (5th Cir. 1988); *Wimberly v. Dretke*, 2005 W.L. 877934 (N.D. Tex. 2005). Here, a review of the record supports the conclusion of the trial court, and Texas' Court of Appeals that the evidence did not support Schulz' claim of self-defense. In the absence of some evidence to support Schulz' claim of self-defense under section 9.32 of the Texas Penal Code, it was not error to refuse a self defense instruction. Accordingly, the Texas courts properly rejected this claim, and no relief is available under § 2254(d).

### C. Ineffective Assistance of Counsel

In his final claim, Schulz maintains that his trial counsel was not prepared for trial, and was therefore ineffective. Schulz alleges as follows:

> By the trial judge denying (CR.–30), Petitioner's retained counsel's good faith motion for continuance (CR.– 27-29), which denial forced Petitioner to undergo a trial with

---

[2] The Texas Court of Criminal Appeals, in connection with Schulz' state application for writ of habeas corpus, likewise rejected Schulz' complaints about the jury charge, finding that such complaints had already been addressed by the intermediate Court of Appeals. *Ex Parte Schulz*, WR-64,664-01 at 831-832, and cover.

an unprepared (RR. – 71), substitute counsel who had less than three (3) days to prepare.

In addition, in an affidavit Schulz filed in support of his § 2254 application, Schulz states as follows with respect to counsel's preparedness:

> 3. On February 2nd, 2003, I was released from the Harris County, Texas Jail on bond. On February 3rd, 2003, I retained the services of George J. Parnham, a licensed attorney in Houston, Texas, to represent me in Cause No. 943823. After we had discussed the facts and circumstances surrounding the offense that had transpired on August 24, 2002, and Mr. Parnham had conducted the legal research he felt necessary, it was Mr. Parnham's considered professional opinion that there was a substantial, provable issue of self-defense upon which a successful defense could be mounted at trial. During the course of our discussions, I gave Attorney Parnham information concerning three (3) individuals who possessed material information of defensive value: Ms. Gina Phillips, who resided in Gun Barrel City, Texas, and testified during the trial (RR. IV – 98-118); Ms. Rosa Hansford, 630 Brown Road, Willis, Texas 77378; and Dwight Sadler, 9234 East Avenue L, Houston, Texas 77012-2728. I also mentioned an individual known only as "Purdy," who had been a participant in and eyewitness to events preceding commission of the offense.
>
> 4. During the latter part of March, 2003, Attorney George J. Parnham related to Affiant and a friend that trial in the case would not begin until mid-summer of 2003. Unbeknownst to Affiant until receiving a copy of the appellate record in 2005, the trial court Judge had set a trial date for April 7, 2003, and Attorney Parnham had filed what appeared to be a good-faith Motion for Continuance (CR. 27-29), in which is stated that the Assistant District Attorney assigned to the case, Attorney Perry Jo Rendon, had no objection to the request for continuance. (CR. 27). On the same date, April 2nd, 2003, the trial court Judge, Honorable Mary Lou Keel, <u>denied</u> the motion for continuance. (CR. 30).
>
> 5. On or about April 4th, 2003, Attorney Dee McWilliams contacted me, advising that in-court proceedings in cause No. 943823 were scheduled to commence on April 7th, 2003. Attorney McWilliams advised that Attorney George Parnham would not be available to try the case, and that he (Attorney McWilliams), could not convince the judge to grant a continuance. Perusal of the record of trial proceedings (RR. I through IV), reveals that despite sincere efforts to "wing it," Attorney McWilliams was not in the least familiar with any aspect of the case. The only witness that Attorney McWilliams had an opportunity to interview was Ms. Gina Phillips, who (according to what she personally related to Affiant), met with Attorney McWilliams some thirty (30) minutes before she testified in April 11th, 2003.

Exhibit 2 to Petitioner's § 2254 Application (Document No. 1).

Claims of ineffective assistance of trial counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

In connection with Schulz' state application for writ of habeas corpus, the Texas Court of Criminal Appeals determined that Schulz had failed "to present factual habeas allegations, which, if true, would entitle him to relief based upon ineffective assistance of counsel, but instead, merely presents conclusory allegations which are insufficient to support habeas relief." *Ex Parte Schulz*, WR-64,664-01 at 831. This rejection of Schulz' ineffectiveness claim is not contrary to or an unreasonable application of *Strickland*, nor is it based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. In neither the state habeas proceeding nor in this § 2254 proceeding has Schulz alleged with any particularity what counsel did, or did not do, on his behalf, that could constitute deficient performance within the meaning of *Strickland*. As found by the Texas Court of Criminal Appeals, and as is borne out by the record herein, Schulz has asserted nothing more than conclusory allegations that his counsel was unprepared at trial. Schulz has not alleged what more his counsel should have done to prepare for trial, and has not alleged any facts that would support a conclusion that counsel was ineffective for failing to call Rosa Hansford,

15

...

Dwight Sadler and "Purdy" as defense witnesses in the case.[3] Accordingly, under § 2254(d) no relief is available to Schulz on his ineffective assistance of counsel claim.

## VI.     **Conclusion and Order**

Based on the foregoing, and the conclusion that Petitioner's claims have been properly adjudicated on the merits by the state courts, and that no relief is available to Petitioner on his claims under § 2254(d), the Court

ORDERS that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED WITH PREJUDICE. In addition, it is further

ORDERED that a Certificate of Appealability is DENIED. A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329

---

[3] To be entitled to relief on an ineffectiveness claim premised on uncalled witnesses, a habeas petitioner must identify the witness who should have been called, show that a witness's testimony would have helped him, and demonstrate that the witness would have testified to certain facts or information at trial. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Here, there are no allegations to support an ineffectiveness claim premised on uncalled witnesses.

(2001). When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Given the claims raised herein as well, as the rejection of Petitioner's claims by the Texas courts, the Court determines that reasonable jurists would not find the assessment of Petitioner's constitutional claims to be debatable or wrong. Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 6th day of December, 2007.

Frances H. Stacy
United States Magistrate Judge